EPHRAIM BALLARD *versus* FRANCIS G. BUTLER, & *als.*

An easement may be extinguished.

An easement, created by reservation in a deed, and consisting in a right to take water from a well, imposes upon the owners of the servient estate, the obligation to keep the well in repair or in a condition to be used. Such a reservation does not assure the right in the well as a permanency, but only so long as it existed, in a suitable state for use.

Such an easement is destroyed by erecting buildings of a permanent character over and upon the well.

For the wilful destruction of the easement by the erection of such buildings by the owner of the servient estate, damages may be recovered.

One who purchases the *dominant* estate, *after the extinguishment of the easement,* can have no remedy against one who also purchased the *servient* estate, *after* such extinguishment.

ACTION on the case, to recover damages for obstructing an easement appurtenant to the plaintiff's dwellinghouse, viz. : — a well and the right of passing to and from the same.

The *defendants'* claim to the land, upon which the well stood, was derived, (through intervening conveyances,) from Ephraim Dutton. And Dutton's title was derived in 1828, by deed from Nathan Weston, which deed reserved "to said Weston, his heirs and assigns, who may occupy the dwelling-house in which said Weston and John Hovey now live, the right to take water freely from the well, now on the premises, or from any other well which may be sunk there." And all the said intermediate conveyances contain substantially the same reservation.

In this tracing of the title, it appears that Dutton conveyed to Oliver Barrett in 1830, and at the same time, took back a mortgage to secure the purchase money, and that, in 1836, he assigned the mortgage, which in 1843, came by assignment to Francis Butler, the father of the defendant, and under whom their title is derived by inheritance.

The lot, claimed by the *plaintiff,* is near to that claimed by the *defendants.* It was derived to the plaintiff, by intermediate conveyances, under the title of Nathan Weston, whose deed being the first in the series, was made in 1829, to Ebenezer

Caldwell, containing the following clause, "together with the privilege of getting water from the well on the land I sold to Ephraim Dutton, as reserved in my deed to him." Substantially the same clause is contained in all the said deeds.

The title was held by Caldwell until 1841, and came in 1845, to the plaintiff, who immediately entered into, and still continues the occupation of the house.

In 1831, the lot, sold as aforesaid to Dutton, "was covered all over with brick and wooden buildings of a permanent character; the well was entirely covered up, and this state of things has so continued ever since." The case was submitted for the decision of the Court.

*J. Baker*, for plaintiff. Besides the amount of damage, the plaintiff is bound to establish two points: —

1. His title. This is shown clearly by the deeds used in the case.

2. The disturbance by the defendant. The case shows that the well was covered up by permanent erections, in 1831, by persons under whom the defendant claims. And for the continuance of the disturbance, the defendants are liable from the time their title commenced. These two positions establish the plaintiff's right to recover.

*H. W. Paine*, for defendants.

The obstruction complained of was erected long before the ancestor of the defendants became the owner of the servient estate. It is therefore *only* for the *continuance* of the obstruction, that the plaintiff has any pretence of complaint.

Admitting that the erections complained of were an invasion of the plaintiff's easement, he has shown no right of action, because he does not show that, before instituting the suit, he requested the defendants to remove the erections.

Butler might reasonably have supposed that the easement had been relinquished or abandoned. "When the party against whom the action is brought, was not the original creator of the disturbance, a request must be made, to remove the nuisance, before any action is brought." *Penruddock's*

*Case,* 5 Co. p. 101; *Bent* v. *Haddon,* Cro. Jac. p. 555; Gale & Whatley on Easements, 295.

If this principle is to be applied for the protection of a purchaser or a lessor, *a fortiori,* it will to those who have the inheritance cast upon them by the act of the law.

Again, the well was covered long before the plaintiff became the owner of the dominant estate, and long before the servient estate was purchased by the defendant's ancestor.

In 1831, the well ceased to exist as a well, and the easement was extinguished. *Hancock* v. *Wentworth,* 5 Metc. 446.

The owner of the dominant estate at the time, might have maintained his action and recovered damages commensurate with his loss. But his right of action was not assigned to his grantee, nor did it pass with the land. The plaintiff purchased " the right to take water from the well." There was *then* no well, and none has since that time been sunk.

*Baker,* in reply.

1st. A demand on the defendants was not necessary. The law does not require *useless acts.* The well was covered with buildings of a permanent character of great value, and no man believes that these defendants, on request by plaintiff, would have removed them. No such request is necessary in analogous cases, such as flowing lands, diverting water courses or raising dams so as to injure mills above.

2. An easement of this nature is a *real right,* 5 Mass. 129, 7 *ib.* 387, and cannot be acquired without a grant, express or implied. 3 Kent's Com. part 6, § 52, pages 434 and 441; *Cook* v. *Stearns,* 11 Mass. 536—7; *Thompson* v. *Gregory,* 4 Johns. 83; *Ricker* v. *Kelly,* 1 Maine, 118; *Arnold* v. *Stevens,* 24 Pick. 106. Why then should it be lost or extinguished with any less formality?

The easement was not extinguished. The case cited for defendants, 5 Metc. 446, lays down the modes of extinguishing such rights. By the act of God, operation of law, and the act of the party. The same rule is found in 2 Hilliard's Abr. p. 54, § 12. This would seem to be the settled law. Now the plaintiff has not lost his right in either of these

modes. *White* v. *Crawford*, 10 Mass. 183 ; Gale & Whatley on Easements, part 3d, Extinguishment, p. 347, 353, and seq. cases ; 10 Pick. 316 ; *Dyer* v. *Sanford*, 9 Metc. 395. The case does not find that the easement was destroyed in 1831 ; it only finds the well was *covered* up with buildings. The permanent obstruction, or even destruction of the *beneficial use* of the easement, is a very different thing from the *extinction of the right* in the plaintiff's grantors. It is the *right* which is at issue here.

SHEPLEY, C. J. — The conveyance from Nathan Weston to Ephraim Dutton must receive such a construction, as will carry into effect the intention of the parties.

Was it their intention to secure to Weston a perpetual easement in the land conveyed or only a right to take water from the well so long as it existed and from any other well, that might be sunk upon that lot ? The right was to take water from " the well now on the premises." There was no obligation imposed upon the grantee to keep the well in repair and in a suitable condition to afford wholesome water, or even to continue to preserve its existence. It could not be expected, that it would continue always in a condition to be useful, or indeed in any condition as a well, without some attention and expense for its preservation. The clause providing, that the grantor might take water from any other well, which should be sunk upon the premises shows, that the parties contemplated the possibility, that the well might cease to exist from some unexplained cause or from the act of the owner of the estate ; and that another might be sunk as a substitute for it.

If the well had become choked by the falling of its walls, or had been wantonly filled up by an unknown person, Weston could have maintained no action against Dutton for a disturbance of his easement. For the mere reservation of the right of use, cannot be extended to embrace a covenant to repair, much less to embrace a covenant for the perpetual preservation of the thing subjected to the use. It being well known that all earthly structures are subject to decay and finally to destruc-

tion, it would be most unreasonable to raise by implication, a covenant for perpetual preservation.

In the case of *Doane* v. *Badger*, 12 Mass. 65, it appeared, that lands were set off to Christopher Marshall, " reserving the privilege of a well and pump to the children and heirs hereafter mentioned." To the after mentioned heirs of Thomas Marshall, land was set off, " with a right and privilege in the well and pump, they paying at all times hereafter, their proportional part of the charge in the maintenance of said well."

The plaintiff was the owner of the dominant, and the defendant the owner of the servient estate. The Court considered, that he would not be liable to keep the well in repair, without an express covenant for that purpose, although the owner of the dominant estate was required to contribute his proportion.

In the case of *Blake* v. *Clark*, 6 Greenl. 436, it was held, that the use of a mill yard set out in the division of an estate, " for the use and accommodation of the mills " was " an easement to continue only so long as the mill should be occupied as such."

In the case of *Brondage* v. *Warner*, 2 Hill, 145, it appeared, that William Leslie granted to Joseph Benjamin the privilege of building to the height of three stories, the east wall of his house on the top of the west wall of Leslie's tenement, already erected. The tenement formerly owned by Leslie had been burnt down leaving the west wall standing ; and it was held that the owner of that lot could not recover of the owner of the estate formerly owned by Benjamin, the land on which that wall stood, and that his right to the enjoyment of that easement, would continue, " so long as the wall stands and answers the purpose."

The reservation in the conveyance made by Weston, cannot therefore, upon a correct construction, be considered as assuring to the owner of the dominant estate a right to the easement after the well, without the fault of the owner of the servient estate, had ceased to exist in a condition to be used as a well.

When the person, to whom a servitude is due, does an act

incompatible with the nature and exercise of it, the servitude is thereby extinguished. *Moore* v. *Rawson*, 3 B. & C. 332 ; *Taylor* v. *Hampton*, 4 McCord, 96 ; *Corning* v. *Gould*, 16 Wend. 531. In the latter case the opinion declares, that a party to whom a servitude is due may effect its extinguishment by suffering erections of a permanent kind, which would prevent its use, such as edifices or walls ; and that it would also be extinguished by his own act, by the erection of such permanent edifices.

Much of the doctrine respecting servitudes is derived from the civil law. Chancellor Kent cites that law with approbation, when it is not opposed to the common law, as authority in such cases. He says, " the doctrine of the civil law was, that a servitude was presumed to have been released or renounced, when the owner of the estate, to which it was due, permitted the owner of the estate charged with it to erect such works on it, as a wall for instance, which naturally and necessarily hindered the exercise of the right and operated to annihilate it." He states, that the mere sufferance of such works to be erected would not raise the presumption of a release, unless the sufferance continued for a time requisite to establish such a presumption, " or the works were of a permanent and solid kind, such as edifices and walls." 3 Kent's Com. 448—9. An easement may be extinguished or destroyed. *Hancock* v. *Wentworth*, 5 Metc. 446.

Was the well destroyed in the year 1831, by being entirely covered over by brick and wooden buildings of a permanent character ? It is obvious, that it became impossible to use it as a well, while it was thus covered. All access to it was thereby excluded. If an action on the case had been then commenced by the owner of the dominant estate against the owner of the servient estate, to recover damages for a wilful destruction of the well and of his easement, he could have maintained it upon the proof now presented and have recovered damages for its total loss, unless the reservation had been construed to secure it to him only for so long a time, as it should be the pleasure of the owner of the servient estate to

continue its existence. If the owner of the servient estate, after thus destroying the easement, had conveyed it to another person, the owner of the dominant estate could not recover damages of that person for its destruction, with which he was not chargeable; nor for neglect to repair or to restore the well, unless by virtue of an implied covenant running with the land, which is inadmissible. What is the present action but an attempt to compel such other person to repair or to restore a well, which had been destroyed before he became the owner of the estate, without any covenant attached to it, by which he can be required to do so? The argument is, that the action is brought to recover damages for a continuance of the disturbance. But how can there be a continued disturbance of that, which long since ceased to have an existence.

It appears from the exhibits of title, that Ebenezer Caldwell was the owner of the estate, to which the easement was appurtenant, from August 13, 1829, to September 29, 1841; that the owner of the estate, from which the servitude was due, erected permanent buildings entirely destructive of the use of the easement, in the year 1831; and that Caldwell continued to be the owner of the estate, to which the servitude was due, for about ten years afterward, without making any complaint, so far as appears, and without taking any measures to protect or preserve his easement. The grantees of Caldwell conduct in like manner, until the ancestor of the defendants purchased the servient estate, on December 23, 1843. Twenty years of non-user of the easement had not elapsed, when this action was commenced; but such length of time is not required to extinguish the easement, when works of a permanent kind, which necessarily hindered the exercise of the right "and operated to annihilate it," had been erected.

If it be considered, that the easement was wrongfully destroyed, by the owner of the estate subjected to it, in the year 1831, and that the owner of the estate, to which it was appurtenant, might have recovered of him damages to the extent of its value, still the easement having been destroyed could no longer continue appurtenant to that estate or be conveyed by

a conveyance of it. If it be considered as destroyed by the erection of permanent buildings by one party, and by the non-user and neglect of the other party to enforce his rights, so that it had no existence, when the plaintiff purchased on December 12, 1845, the result would be the same, he would acquire no title to it.

The conclusion, that it was annihilated and destroyed by the erection of permanent buildings, absolutely preventing its further use, is authorized by the authorities already noticed.

*Plaintiff nonsuit.*