JAMES FITZPATRICK *vs.* BOSTON AND MAINE RAILROAD.
MOSES SMITH *vs.* Same.

York. Opinion August 12, 1891.

*Easement. Abandonment. Change. Damages. Railroad. Eminent Domain. R. S., c. 51, § § 14, 16, 21.*

In 1889, the plaintiffs sued the defendant in trespass for disturbance of their right of way, acquired by grant, across defendant's railroad. The right of way which they held was appurtenant to lands they owned northerly of the railroad. It was changed somewhat from its accustomed course by the defendant's servants upon the southerly side of the railroad. The changes alleged were as follows: (1,) In 1881, digging cellars and erecting four houses fronting upon a highway, which had been located in 1876, and which struct-

ures covered about one hundred and fifty feet along the way. (2,) In 1888, excavating the surface, along which the way ran, to the depth of five or six feet, to get a practicable grade for a spur track leading from the main track to a gravel pit belonging to the defendant.

A new and convenient way passing over the defendant's land, and connecting with a public highway, was substituted by the defendant for that part of the old way interrupted by the houses. The plaintiffs made no claim for damages but used the substituted way for seven years. *Held;* That the plaintiffs had accepted the new way in lieu of that destroyed by the cellars and houses, and had acquiesced in the change and intentionally surrendered and abandoned the old way in consideration of the new one opened for their benefit.

In making the excavations, in 1888, which deprived the plaintiffs of the use of their way for two hundred and fifty feet, the defendant invaded the plaintiffs' rights. Another suitable way about twenty feet distant was provided for the use of the plaintiffs as a substitute for the old one, and after the lapse of about two weeks was adopted and used by them. *Held;* That as it appears that the parties did not sustain any actual damage as a necessary result of this modification in the location of the way,— one of them having received satisfaction for the temporary inconvenience pending the defendant's operations,— only nominal damages should be allowed.

The plaintiffs refused for a short time to travel on the substituted way, under the impression that by so doing they would recognize a right in the defendant to make the change and thereby surrender their rights in the old location. They claimed substantial damages for this interruption. *Held;* That the law makes it incumbent on a person, for whose injury another is responsible, to use all ordinary care and to take all reasonable measures available to avoid the loss and render the damage as light as practicable; and it will not permit him to recover any damage which might have been prevented by the exercise of such care and diligence. *Also,* That the plaintiffs' right of way was not extinguished by the defendant's exercise of the power of eminent domain, and was not paid for in the estimation of land damages; and, therefore, the plaintiffs' rights were invaded in making the excavations in 1888.

ON REPORT.

Two actions of trespass for wrongfully placing and maintaining obstructions across the plaintiffs' right of way across the defendant's lands.

The defendant admitted that the plaintiffs had title, by grant, to the farm-crossing across its railroad, and also a right of access over other lands of defendant corporation, to and from the same, in every place where it did any acts which the plaintiffs in their writs charge it did; but they contended that no actual damage, remaining unsatisfied, had been done the plaintiffs; and that as the old way had been extinguished, at the

places where the changes had been made, no action for a con-
tinuing nuisance could lie.

*W. S. and D. S. Pierce*, for plaintiffs.

Plaintiffs have not abandoned their old way. No evidence or
presumption of intention to abandon. To extinguish even a
prescriptive way the evidence must clearly show intentional
abandonment. *Pillsbury* v. *Moore*, 44 Maine, 154; *Williams*
v. *Nelson*, 23 Pick. 141; *French* v. *Braintree Manuf. Co.*
23 Pick. 216; *Hurd* v. *Corliss*, 7 Met. 94.

Even a parol agreement between the owners of the dominant
and servient estate to substitute a new way for an old prescrip-
tive way, would not amount to an abandonment of it. *Lovell* v.
*Smith*, 3 C. B., N. S. 120; *Erb* v. *Brown*, 69 Penn. St. 218;
*Butt* v. *Napier*, 14 Bush (Ky.), 39; *Larned* v. *Larned*, 11
Met. 421; 2 Wash. R. P. p. 338; Wash. Ease. p. 300.

The nonuser of a right of way for the period of twenty years
is evidence of an intention to abandon; but it is open to expla-
nation, and it may be controlled by evidence that the owner had
no such intention while omitting to use it. *Pratt* v. *Sweetser*,
68 Maine, 344; *Farrar* v. *Cooper*, 34 Maine, 394.

If this way has never been abandoned, it still exists, since
there is no pretence that there has been any express relinquish-
ment of it, and the defendant corporation had not even color of
authority to obstruct or interfere with the plaintiffs' full and
complete enjoyment of it. The laying out of the highway in
1876 near to the way in question, even had such highway
extended parallel with this way, which is not assumed by the
defendant, would not have operated to extinguish this way, not
though it had been prescriptive. *Chadwick* v. *McCausland*,
47 Maine, 342.

Mere nonuser for more than twenty years of an easement
acquired by grant, will not destroy the right if the owner of
the servient estate does no act which prevents the use. 2 Wash.
R. P. p. 339, and cases cited. Wash. Ease. p. 716, § 551.

*G. C. Yeaton*, for defendant.

WHITEHOUSE, J. The plaintiffs had a right of way across
the defendant's railroad. In 1881 the defendant obstructed it

by digging four cellars and placing houses upon them, and in 1888 disturbed it at another point by making excavations for the purpose of laying a spur track to a gravel pit. November 30, 1889, the plaintiffs commenced these actions for damages. The evidence relating to both cases is presented in a single report.

The plaintiffs' right of way originated in a decree of partition made in 1805 between John Haggins and Edmund Haggins, which reserved "liberty for John to pass and repass with teams and cattle through said lot on the side adjoining Butler's and Jenkins' land by gates or bars, as the occasion may require, at all seasons of the year." Whether, by this description, the right thus reserved can be deemed to have been definitely located over a particular way with a fixed boundary "on the side adjoining Butler's and Jenkins' land," or be held as a right to have a suitable and convenient way in that portion of the lot, the precise location and limits of which on the surface of the earth were to be determined by the parties according to circumstances, it seems to be unnecessary to consider. For it is not in controversy that the right had been enjoyed and the way used by the plaintiffs and their predecessors in title continuously from the partition named until the disturbance complained of, in substantial accordance with the location existing at the latter date; and it is expressly admitted in the report of the case, that the "plaintiffs had title by grant to the farm crossing across defendant's railroad and a right of access over other lands of defendant corporation to and from the same in every place where defendant did any acts which plaintiff in his writ charges that he did."

(1.) With respect to the obstruction caused by digging the cellars and erecting the houses in 1881, the facts are undisputed. A public highway fifty feet wide was established and opened to travel in 1876, leading from a point near the beginning of plaintiffs' private way in the dividing line between Berwick and South Berwick, northerly about eight hundred feet across the defendant's location; and the houses in question were erected by the defendant across the private way and fronting on the public way. At the same time the defendant prepared for the use of the plaintiffs, as a substitute for that part of the old way

thus obstructed, a new and equally good but slightly circuitous way leading over the highway described and returning to the original private way. The effect of this change of location was to divert the course of travel about twenty feet to the north of the old way. The defendant corporation owned in fee simple, all the lands covered by the houses, the location of the highway and the plaintiffs' present private way substituted 'for the old way; also the lands purchased for the gravel pit, and all lands within its location from South Berwick station easterly beyond the farm crossing fixed by the commissioners at the time of the location of the road at or near stations twenty-four and thirty-nine.

A similar question was presented in *Ballard* v. *Butler*, 30 Maine, 94. This was an action for obstructing plaintiffs' easement consisting of a right to draw water from a well and to pass to and from the same. It appeared that the well had been entirely covered over · by brick and wooden buildings of a permanent character. In the opinion, SHEPLEY, C. J., says : "It is obvious that it became impossible to use it as a well while it was thus covered. All access to it was thereby excluded. If an action on the case had been then commenced by the owner of the dominant estate against the owner of the servient estate to recover damages for a wilful destruction of the well and of his easement, he could have maintained it upon the proof now presented and have recovered damages for its total loss. . . . The argument is that the action is brought to recover damages for a continuance of the disturbance. But how can there be a continued disturbance of that which long since ceased to have an existence? . . . Twenty years of non-user of the easement had not elapsed when this action was commenced; but such length of time is not required to extinguish the easement when works of a permanent kind, which necessarily hindered the exercise of the right and operate to annihilate it, had been erected." See also *Rockland Water Co.* v. *Tillson*, 75 Maine, 170.

In the case at bar, the obstruction in 1881 was unquestionably of a permanent character. Four cellars were dug and completed across the way and houses of a substantial and permanent char-

acter erected upon them. It must have been understood by all the parties interested that the result of this act was not merely a temporary obstruction, but a practical extinguishment of so much of the way as was covered by the houses. It was a completed act in 1881. There was no expectation that the houses would be removed or the cellars filled up. The interruption was manifestly final. The plaintiffs then had a cause of action for an invasion of a right. The conditions were fixed and enduring and were not expected to change.

It is evident that the plaintiffs made no serious objection, if any, to the change in the way thus caused by the erection of the houses. They made no claim for damages. For seven years they used the substituted way as occasion required without complaint, and in consideration of the advantage of being connected with the highway, made safe and convenient at public expense, they evidently accepted the new way in lieu of that destroyed by the cellars and buildings. · Their conduct for seven years succeeding this interruption, sufficiently indicates that there was no intention on their part to raise any question in regard to it until the excavation in 1888. It appears to have been mutually understood that that portion of the way covered by the houses was finally abandoned. The plaintiffs silently acquiesced in the change and intentionally surrendered the old way in consideration of the dedication of and an agreement for the new one opened for their benefit. "It is not the duration of the cesser to use the easement, but the nature of the act done by the owner of the easement or of the adverse act acquiesced in by him, and the intention which one or the other indicates that is material." *Pope* v. *Devereux*, 5 Gray, 412. See also, *Dyer* v. *Sanford*, 9 Met. 395 ; *Smith* v. *Lee*, 14 Gray, 473 ; *Larned* v. *Larned*, 11 Met. 421 ; *Smith* v. *Barnes*, 101 Mass. 278 ; *Leonard* v. *Leonard*, 2 Allen, 543 ; *Kent* v. *Judkins*, 53 Maine, 160 ; *Bangs* v. *Parker*, 71 Maine, 458 ; Washburn on Easements, 215, 709.

(2.) But a different question is raised with respect to the disturbance of the way caused by the excavation near station twenty-four in 1888. This was made for the purpose of obtain-

ing a practicable grade for a spur track leading to the defendant's gravel pit, and the defendant claims that its acts in that respect were not in excess of its chartered rights.   It is not in controversy that this excavation in the way was made on defendant's land either within the original limits of the location, or upon land adjoining purchased by the defendant for a gravel pit to which it had title in fee simple ; and the defendant claims that as all the land was held by it "as for public uses" by virtue of § § 14 and 16 of c. 51, R. S., and as all land damages had been regularly estimated and paid, the defendant's right to make these lands available for "necessary tracks" or the "convenient use" of its railroad was superior to any right a land owner could have to cross it; that such right was taken by the power of eminent domain and paid for in the estimation of land damages. It is true as a general rule that all property is subject to the right of eminent domain irrespective of the use to which it has already been applied or the different estates and interests held in it, and that damages will be assessed only in money unless otherwise provided by statute, and will not be reduced by reserving rights of way across the railroad.   *Bost. Gas L. Co.* v. *R. R. Co.* 14 Allen, 444 ; Pierce on Railroads, 220, and authorities cited.     But it is provided by § 21, c. 51, R. S., that "commissioners shall order the corporation to make and maintain such   .  .  .   farm crossings as they think reasonable ; prescribe the time and manner of making them, and consider this work in awarding pecuniary damages."

And it is admitted in this case that the "damages were awarded with farm crossings fixed by the commissioners at or near stations twenty-four and thirty-nine ;" that "neither of these crossings where they cross the track of the road and the road bed have ever been changed or altered since their original construction ;" and that the plaintiffs had a "right of access to and from the same in every place where the defendant did any acts which plaintiff in his writ charges that he did."   The defendant, furthermore, concedes that the plaintiffs still have a "legal right to the continuance of a suitable and convenient approach thereto over the other land of the company."

In view of this statute and of these concessions, the defendant cannot consistently claim that the "location of the road operated as an extinguishment of the right of way," or that it was taken and paid for in the estimation of land damages. On the contrary, the reasonable presumption is that the "work" of maintaining farm crossings for the benefit of the plaintiffs in connection with their right of way was "considered" by the commissioners "in awarding pecuniary damages;" and it is plain that the continued existence of the plaintiffs' right has been constantly recognized by the defendants.

In making an excavation which wholly deprived the plaintiffs of the use of the way for a distance of two hundred and fifty feet, the defendant invaded the plaintiffs' right. As soon as practicable, however, here, as in the case of the former disturbance, another suitable and convenient way only thirty feet distant was provided for the use of the plaintiffs as a substitute for the old one ; and after the lapse of about two weeks, the plaintiffs adopted the new way and have since continually used it. See *Pope* v. *Devereux*, 5 Gray, and other authorities, *supra*. But before the new way was opened, on the day the excavation was commenced and before it was finished, the plaintiff, Fitzpatrick, being absent on business, was prevented by defendant's operations from reaching his home ; and for this temporary interruption the defendant made satisfaction by paying him $10, August 8, 1888, "for damage sustained by reason of closing passage-way to his house at South Berwick." Beyond this it is not apparent that either of the plaintiffs necessarily sustained any actual damage as a result of the final modification in the location of the way. True, they refused for the short time named, to travel on the substituted way, under the impression that by so doing they would recognize a right in the defendant to make the change and surrender their right to the old location. Thus measured, Fitzpatrick estimates his damage at seventy dollars and Smith at twenty-five dollars. But the law makes it incumbent on a person for whose injury another is responsible to use all ordinary care and to take all reasonable measures available to avoid the loss and render the damage as light as practicable, and it will not permit

him to recover any damage which might have been prevented by the exercise of such care and diligence. *Miller* v. *Mariners' Church*, 7 Maine, 51; *Grindle* v. *Eastern Ex. Co.* 67 Maine, 325, and authorities cited. Under this rule the evidence affords no proof of actual damage; but some damage is presumed to flow from the violation of a right.

*Judgment for each plaintiff for one dollar and costs.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.