Charles E. CHASE, et al.

v.

Merle C. EASTMAN, et al.

Supreme Judicial Court of Maine.

Argued May 10, 1989.

Decided Aug. 15, 1989.

Thomas E. Powers (orally), Seaborn Associates, P.A., Portland, for plaintiffs.

Peggy L. McGehee (orally), Perkins, Thompson, Hinckley & Keddy, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The plaintiffs, Charles E. Chase, et al., own various parcels of inland real property on Thompson's Point in Naples. Thompson's Point is bordered, in part, by Sebago Lake and the Songo Bayou, formerly a portion of the Songo River. The defendants and counterclaimants, Merle C. East-

man and Marlene J. Eastman, own two cottages located on waterfront property on the Songo Bayou. The Superior Court (Cumberland County, *Cleaves, J.*) found that the plaintiffs have an easement to use the Eastmans' property for walking, swimming, fishing, docking boats and other recreational activities and that all but a fifteen-foot strip of the easement has been abandoned by the plaintiffs. The court enjoined the plaintiffs from placing additional docks on the Eastmans' property and from parking vehicles on the residential portions of the property. The Eastmans were permanently enjoined from blocking or otherwise restricting the plaintiffs' access to or use of their easement. The plaintiffs appeal and the Eastmans cross-appeal from the judgment of the Superior Court. For the reasons set forth below, we affirm the judgment.

I.

The history of this real property dispute takes us back to the early 1930's. In 1931, the Town of Naples approved a plan (the "1931 Plan") subdividing a large tract of real property on Thompson's Point into numerous inland and waterfront lots, private ways and waterfront areas designated on the plan as "reservation" or "reserved."[1] The plan was recorded in the Cumberland County Registry of Deeds. The property was owned by Guy Dunton through a corporate entity. A revised plan including additional lots was also approved by the Town of Naples and recorded in 1932 (the "1932 Plan"). The Superior Court found that the reservation areas were set aside to provide the purchasers of inland lots with access to and use of the waterfront.

The focus of this dispute is on the easternmost reservation area indicated on the 1931 and 1932 Plans. The property is, in part, located at the end of a private way now known as Turtle Lane. During the 1950's, Donald Rogers, who was employed by Dunton, dredged a portion of the Songo River and placed landfill on the reservation area and on an island created in the river across from the property. The landfill altered and extended the shoreline of the reservation area. The navigable body of water between the reservation area and the manmade island is now known as the Songo Bayou.

Through two conveyances, Rogers acquired title to the reservation area "subject to all easements and rights of others which may exist." Rogers later divided the property into four numbered lots and, during the early 1970's, built two cottages on the property. The Eastmans purchased the cottages from Rogers and ultimately acquired title to the entire reservation area. Rogers also sold the Eastmans two inland lots adjacent to Turtle Lane.

The plaintiffs made various uses of the reservation area. Plaintiff Irene Harriman, who purchased several inland lots in 1950, used the waterfront of the disputed property for fishing and to moor her boat. She was aware that the cottages were being built on the reservation area, but did not object to their construction or presence. All of the other plaintiffs acquired their inland lots during or after the construction of the Eastmans' cottages. The plaintiffs generally used the waterfront of the reservation area for walking, fishing and other recreational activities. Some of the plaintiffs installed boat docks on the portion of the reservation area located at the end of Turtle Lane.

The plaintiffs, owners of inland lots, each have a deed connected in a chain of title back to Dunton, the common grantor who subdivided the property and recorded the 1931 and 1932 Plans. Those deeds refer to either or both the 1931 or 1932 plans, and contain an express grant with the following or similar language:

> [T]he right in common with others to use the private ways laid out on said plan and also the right to use the parcels marked 'Reservations' on the said plan, but without unreasonably restricting or interfering with the reciprocal rights of

---

**1.** The Superior Court attached no significance to the minor variation in the words used to label

the waterfront areas.

others to the use of said ways and reserved sections.

During the summer of 1984, Mr. Eastman informed the plaintiffs that he owned the entire easternmost reservation area and that they had to remove their docks and boats from his property. The following spring, despite the written objections of the plaintiffs, the Eastmans blocked the end of Turtle Lane with a pile of gravel, thereby restricting the plaintiffs' access to the waterfront.

The plaintiffs filed a complaint in the Superior Court seeking an order enjoining the Eastmans from blocking access to the waterfront and requiring them to remove the two cottages. The plaintiffs also sought a declaratory judgment defining the scope of their claimed easement to use the Eastmans' property. The Eastmans' amended counterclaim alleged, in the alternative, that the plaintiffs had no easement, or if an easement did exist, it had been abandoned or was limited to pedestrian access and did not extend to the landfill portions of the property created since 1931.

Following a nonjury trial, the court found that (1) the plaintiffs have an easement allowing them, in common with others, to use the Eastmans' property for access to the waterfront for all purposes reasonably related to the enjoyment of the waterfront; (2) the placement of landfill on the waterfront of the property served to extend the easement from its original terminal point to the new shorefront; and (3) the plaintiffs abandoned a portion of their easement. The intent to abandon was evidenced by their failure, and the failure of their predecessors in title, to object to the construction of the cottages. The court did not find abandonment of "an appropriate strip of land along the waterfront ... sufficient for the reasonable use and enjoyment of the waterfront area by the plaintiffs." The court concluded that:

> [the] plaintiffs have the right to use [the Eastmans' property] for swimming, fishing, boating and boat docking, sunbathing and other reasonably related recreational pursuits with the exception that ... such use is limited to an area along the shorefront and extending back a uniform distance of forty (40) feet from [the] shorefront.

The court permanently enjoined the Eastmans from restricting or impeding the plaintiffs' right-of-way across or use of the property. The court also ordered the Eastmans to pay for the damage to a dock they removed from the waterfront. Subsequently, the court, after taking a view of the property, granted the Eastmans' motion pursuant to M.R.Civ.P. 59(e) to alter or amend the judgment by reducing the width of the easement from forty to fifteen feet. The Eastmans appealed and we remanded the case to the Superior Court for lack of a final judgment on the Eastmans' counterclaim.

Upon remand, the Eastmans, pursuant to M.R.Civ.P. 15(a) and (b), moved to amend the counterclaim. The court granted the motion to amend. The amended counterclaim alleged that, in the event the easement included the right to place docks on the waterfront, it did not permit the placement of *additional* docks or the use of motor vehicles on the property because the additional uses "would unreasonably interfere with and impair each easement holder's correlative rights to sunbathe, fish, picnic and swim." Following a testimonial hearing on the amended counterclaim, the court issued an order on remand and, later, an order correcting judgment pursuant to M.R.Civ.P. 60(a) restricting the placement of any additional docks on the waterfront or the parking of vehicles. The plaintiffs appealed and the Eastmans cross-appealed from the corrected judgment.

## II.

 Contrary to the contentions of the Eastmans, it was not error for the Superior Court to find that the plaintiffs have an easement to use the Eastmans' property in common with others for access to the waterfront.[2] The court also properly found

---

2. This finding was based on the express language in the plaintiffs' deeds and the various references in the deeds to the 1931 and 1932 Plans. The sale of lots by reference to a plan

that the plaintiffs' "right to use" the Eastmans' property entitled them to use the property for all purposes reasonably related to the enjoyment of the waterfront, including, but not limited to, walking, swimming, fishing and mooring and fueling of watercraft[3] and that the placement of landfill on the waterfront extended the easement from its original terminal point to the newly created waterfront.[4]

■ The court also found, contrary to the contentions of the plaintiffs, that the failure of the plaintiffs or their predecessors to object to the construction of the cottages evidenced their intent to abandon their easement to use that portion of the Eastmans' property on which the cottages are constructed.

Although mere nonuse is not enough, an easement created by deed or grant may be extinguished by abandonment. *Adams v. Hodgkins,* 109 Me. 361, 364, 84 A. 530 (1912). An easement may be abandoned by unequivocal acts inconsistent with the further assertion of rights associated with the existence of the easement. 25 Am.Jur.2d *Easements and Licenses* § 103, at 507–08 (1966). The acts asserted as evidence of abandonment must be decisive and conclusive and thereby indicate a clear intent to abandon the easement. *Id.* at 507. We have previously held that an easement holder's intention to abandon an easement may be shown from his failure to object to the erection of a permanent structure that prevents the enjoyment of the rights granted by the easement. *Fitzpatrick v. Boston*

*& Maine R.R.,* 84 Me. 33, 37–38, 24 A. 432 (1891) (failure to object to erecting houses of a "permanent character" obstructing easement supported finding that easement was abandoned); *Ballard v. Butler,* 30 Me. 94, 98–99 (1849) (failure of easement holders to object to covering of well by permanent brick and wood structure resulted in abandonment and extinguishment of easement to use well).

■ As the party claiming an abandonment, the Eastmans had the burden of proof. 1 C.J.S. *Abandonment* § 9, at 15 (1985). Here, as in *Fitzpatrick* and *Ballard,* the plaintiffs and their predecessors in title did not object to the construction of the permanent structures on the Eastmans' property. The cottages were constructed during the early 1970's. One plaintiff, who owned inland lots since 1950, testified that she was aware that the cottages were being built, but voiced no objection to the construction. Another plaintiff testified that he was aware that there were cottages on the Eastmans' property when he purchased his inland lot in 1973. Despite the presence of the cottages, he and the other plaintiffs used the waterfront of the Eastmans' property for recreational activities, but voiced no objection to the presence of the cottages until the commencement of this litigation. Because of the failure of the plaintiffs to object to the construction and continued presence of the cottages, it was not clear error for the court to conclude that a portion of the plaintiffs' easement was extinguished by abandonment.[5]

conveys to the grantees and their successors the right to use the streets and other areas set aside on the plan. *Callahan v. Ganneston Park Dev. Corp.,* 245 A.2d 274, 278 (Me.1968); *Arnold v. Boulay,* 147 Me. 116, 83 A.2d 574, 576–77 (1951).

3. The plaintiffs' deeds provide them with the "right to use" the Eastmans' property, but the deeds do not expressly state the scope and general purpose of the easement. When the purpose of an express easement is not provided, the purpose is determined by reference to the actual or presumed intent of the parties at the time the grant is made. *See Saltonstall v. Cumming,* 538 A.2d 289, 290 (Me.1988). The intent of the parties is established by reference to the circumstances surrounding the conveyance. *Ware v. Public Serv. Co. of New Hampshire,* 412 A.2d 84,

86–87 (Me.1980). It was not error for the Superior Court to conclude that the original grantor intended that the purchasers of the inland lots and their successors in title would have the right to use the Eastmans' property for all purposes reasonably related to the use of the waterfront.

4. *See State v. Yates,* 104 Me. 360, 362–64, 71 A. 1018 (1908) (natural or manmade extension of waterfront does not serve to terminate easement to use waterfront).

5. Because we affirm the finding of abandonment, we need not address the Eastmans' argument that the plaintiffs are barred from asserting an easement on the grounds of waiver, estoppel and laches.

## III.

■ After the court's initial finding that the plaintiffs abandoned a portion of their easement, i.e., all but an area along the waterfront extending back a uniform distance of forty feet, the Eastmans filed a motion to alter or amend the judgment pursuant to M.R.Civ.P. 59(e). The court, after a hearing on the motion and taking a view of the property, granted the motion and reduced the width of the remaining unabandoned easement from forty to fifteen feet. The decision to grant a motion pursuant to M.R.Civ.P. 59(e) is addressed to the discretion of the trial court and will stand on appeal absent an abuse of that discretion. *Town of Lincolnville v. Hemenway*, 543 A.2d 1375, 1376 (Me.1988); *Arnheiter v. Carreiro*, 539 A.2d 629, 630 (Me.1988).

The court was confronted with the issue of whether the plaintiffs had abandoned all or part of their easement. The court concluded that the plaintiffs had abandoned their easement to use the residential portion of the Eastmans' property, but retained an easement to use a forty-foot strip of the property along the waterfront. Upon reexamination after the court took a view of the property, it became clear that the forty-foot easement came within six feet of one of the Eastmans' cottages. It was not clear error for the court to conclude that a forty-foot easement was inconsistent with its finding that the plaintiffs had abandoned their easement to use the residential portion of the Eastmans' property. The court, accordingly, reduced the width of the easement to fifteen feet. The court acted within the proper exercise of its discretion in granting the motion to alter or amend, and it was not clear error for it to conclude that the plaintiffs had abandoned all but fifteen feet of their easement.

*Cates v. Farrington,* 423 A.2d 539, 541 (Me.1980).

## IV.

■ The Eastmans' initial appeal to the Law Court from the Superior Court's amended order was remanded for lack of a final judgment on their counterclaim. The Eastmans thereafter filed a motion pursuant to M.R.Civ.P. 15 to amend the counterclaim to seek a declaration that any easement rights of the plaintiffs did not include the right to park vehicles and other equipment or place additional docks or other structures on the waterfront of the reserved area. The Eastmans alleged that such vehicles or additional docks in that area would unnecessarily interfere with their rights and the correlative rights of all easement holders.[6]

The court granted the motion to amend and, following a testimonial hearing, issued an order on remand, and later, an order correcting judgment pursuant to M.R. Civ.P. 60(a). The court noted that the plaintiffs' deeds each contain an express grant to use the reservation area "in common with others ..., but without unreasonably restricting or interfering with the reciprocal rights of others to the use of said ways and reserved sections." The court found that the intent of the original grantor was to provide the inland property owners with access to and use of the waterfront for all purposes reasonably related to the enjoyment of the waterfront. The court further found that the placement of any additional docks on the waterfront of the reserved area would "unreasonably restrict the rights of all common easement holders" to use the easement for recreational activities other than boating and restricted the placement of docks, and the presence of vehicles and equipment.

---

**6.** We reject the plaintiffs' contention that the Eastmans lack standing to raise any issue relating to the correlative rights of easement holders. In order to have "standing" to assert a claim or cause of action, "[a] party must assert a personal stake in the outcome of the litigation and present a real and substantial controversy touching on the legal relations of parties with adverse legal interests." *Franklin Property Trust v. Foresite, Inc.,* 438 A.2d 218, 220 (Me.1981).

As the owners of the property over which the plaintiffs claim an easement, the Eastmans have a personal stake in the outcome of any litigation addressing the scope of the easement. The plaintiffs have maintained that their easement entitles them to use all of the Eastmans' property for recreational activities. The Eastmans, in contrast, have argued that the plaintiffs do not have an easement. The parties clearly have "adverse legal interests." *Id.* at 220.

The plaintiffs argue that the amendment to the counterclaim should not have been allowed pursuant to M.R.Civ.P. 15 because it was beyond the scope of our remand order. That order remanded the case to the Superior Court "for such further proceedings ... as are necessary to dispose of all pending claims." The plaintiffs maintain that the issue of additional docks was not a "pending" claim.

M.R.Civ.P. 15(a) provides in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The rule expressly provides that leave to amend a pleading "shall be freely given when justice so requires." *See Barkley v. Good Will Home Ass'n,* 495 A.2d 1238, 1240 (Me.1985). We have recognized that M.R.Civ.P. 15 should be "liberally applied" to achieve the "just, speedy and inexpensive determination of every action," the goals set forth in M.R.Civ.P. 1. *Rancourt v. City of Bangor,* 400 A.2d 354, 356 (Me. 1979). The decision to grant a motion to amend a pleading is committed to the sound discretion of the hearing justice and reviewed only for an abuse of that discretion. *Miller v. Szelenyi,* 546 A.2d 1013, 1022–23 (Me.1988); *Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 418 n. 1 (Me.1987).

A central issue in the proceedings below was whether the plaintiffs had an easement to use the Eastmans' property for recreational purposes. The court established that the plaintiffs did in fact have an easement and that the easement entitled them to use the property for sunbathing, swimming, fishing, boating and other reasonably related recreational activities. The remand order was issued by this court precisely because the counterclaim remained pending before the Superior Court. The amendment to the counterclaim permitted the court to consider an issue that was certain to be a source of continuing controversy: whether the presence of vehicles and the placement of additional docks on the waterfront would interfere with the rights of other easement holders. It was not an abuse of discretion for the court to grant the Eastmans' motion to amend the counterclaim, and not clear error for the court to limit the use of the waterfront area by the plaintiffs.

The entry is:

Judgment affirmed.

All concurring.