STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: RE05-153

STATE OF MAINE
Cumb                    Office
                    RAC-Cum-2/3   2007

LESLIE COHEN as SOLE TRUSTEE OF
RED REALTY TRUST, et al.

                Plaintiffs          **RECEIVED**
                                    ORDER ON PLAINTIFFS'
                                    MOTION FOR PARTIAL
                                    SUMMARY JUDGMENT

        v.

ARTHUR SCHWARTZ, et al.              DONALD L. GARBRECHT
                                    LAW LIBRARY
                Defendants
                                    MAY 16 2007


This matter comes before the Court on Plaintiffs' motion for partial

summary judgment on Count I of the complaint, pursuant to M.R. Civ. P. 56(c).

## BACKGROUND

1.      The Parties.

This case revolves around disputed rights of access to the beach at Sebago

Lake in Naples, Maine, and ownership of lakefront property. The Plaintiffs in

this case (who will be referred to collectively as "Plaintiffs") are all owners of

property near Sebago Lake. Plaintiff Leslie Cohen is trustee of the Red Realty

Trust ("RRT") and White Realty Trust ("WRT"), both of which were established

in 1990. RRT owns Lot 71 on Tax Map U-19 ("the tax map"). Its lot ownership

includes the right to use reserved areas and private ways on the 1932 Plan

(generally referred to as "usage rights"). WWT owns Lot 68 on the tax map.

Cohen is also Personal Representative of the Estate of Douglas M. Schair, which

owns Lots 75 and 81-3.

1

Plaintiffs Robert and Yvette Kaszynski, Andrew Shulman and Richard Shulman, Joan and John Sizer, James and Janice Sizer, and Edwyna Cole and Kevin Cole all own various lots depicted on the tax map.[1] The Defendants, Arthur and Faith Schwartz ("Defendants") own Lot 70, which is the subject of this dispute.

2.      Background and the Instant Action.

In 1932, Naples Corporation owned much of the real property now owned by the parties to this case. Its lots are depicted on the "Songo Bayou and Extension Plan," and this plan shows what later became the properties of several of the parties.[2] In 1937, a revised plan was developed, which adjusts lot lines. The 1937 plan also depicts the current right of way ("ROW") west of the Schwartz lot, which allegedly provides access to the lake for those property owners not abutting it.

In 1985, David and Sandra Snow conveyed to Faith Schwartz certain lots on Sebago Lake referred to as Lots A, B, and C, and now collectively known as Lot 70.[3] Since that time, Defendants have used a residence on Lot 70 as their summer vacation home. They spend approximately fifteen weeks a year in that home, which has a waterfront view. Defendants have also maintained and improved their property, along with the ROW and beach. Plaintiffs allege that they have also helped to maintain the ROW.

---

[1] Marjorie Smith was also a named Plaintiff, but she passed away shortly after suit was filed. *See* Plaintiff's Complaint for the various lot numbers.

[2] The Plan is recorded in the Cumberland County Registry of Deeds at Deed Book 21, Page 7.

[3] The chain of title is as follows: the Snows obtained title to Parcels A, B, and C from Arthur and Marjorie Marks in 1984. Parcel A: Naples Corporation to Glancy in 1939; Glancy to Goldstein in 1946; Goldstein to Wolfman in 1946; Wolfman to Goldstein in 1948; and Goldstein to Marks in 1955. Parcel B: Naples Corp. to Burnell in 1938; Burnell to Goldstein in 1944; and Goldstein to Marks in 1955. Parcel C: Naples Corp. to Goldstein in 1945; and Goldstein to Marks in 1955.

Plaintiffs allege that, since Defendants acquired their land in 1985, Defendants have made unfounded claims to own the ROW and certain portions of the beach, and have threatened to prevent Plaintiffs from using it. Additionally, Plaintiffs argue that Defendants have moved pins marking the ROW and have tried to obstruct it with objects such as propane tanks. More active efforts at obstruction have allegedly occurred since Summer 2004. Plaintiffs claim to have used the ROW and reserved areas for over 20 years, consistently and in an open and notorious manner, without permission of Defendants. Plaintiffs contend that the 1985 conveyance to Defendants did not include an ownership interest in the ROW running between Lots A and C, which Defendants dispute.[4] Plaintiffs use the ROW to access the beach area for recreation. Defendants contend that they have acted as owners of the ROW and beach areas since 1985. They claim that they did give Plaintiffs permission to use the ROW and beach, but have recently threatened to revoke it because Plaintiffs have harassed them, interfered with their dock and boats, and trespassed on their "private beach."

In November 2005, Plaintiffs filed a three-count complaint. Count I seeks a declaratory judgment that: (1) the beach is part of a reserved area on the 1932 plan; (2) the ROW is an unnumbered area in the 1932 plan; (3) Defendants have no ownership interest in the beach at the end of the ROW or 60' to the west of the ROW; and (4) Plaintiffs are entitled to attorneys' fees and costs. Count II seeks an injunction to prevent Defendants from interfering with Plaintiffs' right to use

---

[4] There has also been some dispute about a 1992 quitclaim deed to Faith Schwartz purporting to confirm the title transferred in the 1985 deed, and Plaintiffs question its validity. As it makes no warranties of title, and the 1985 deed provides a sufficient basis for deciding this motion, this Court will not address the legality of that deed at this time.

3

the ROW for beach access and to use reserved areas. They also request an order for the Defendants to stop interfering with their recreational use of the area, including the use of the dock and moorings, and to stop interfering with their general use and enjoyment. Count III presents an alternative argument that the Plaintiffs at least have a prescriptive easement to use the ROW and reserved areas.

Defendants deny Plaintiffs' allegations of interference and raise several affirmative defenses, including estoppel, laches, waiver, and adverse possession, among other arguments. They also filed a counterclaim for statutory trespass, permanent injunctive relief to prevent Plaintiffs from interfering with their use and enjoyment, and a declaratory judgment that they own the path and disputed beach area. Defendants assert that Plaintiffs have permissive access rights, but that Plaintiffs have caused damage to their property and removed barriers they put up to block access.

Plaintiffs now move for partial summary judgment on Count I of their complaint. First, they argue that Defendants have no ownership interest in the ROW or the beach because the 1985 deed did not convey such rights.[5] They further contend that Defendants own land at the shore of Parcel B, subject to the rights of others in the development to use it. They seek summary judgment on Count I with a declaration that the beach is part of the reserved area that everyone may access, that the shoreline at the edge of Defendants' Lot B is also a reserved area that all Plaintiffs are entitled to use, and that the ROW is an unnumbered area on the 1932 plan.

---

[5] As previously mentioned, they argue that the 1992 deed was "legally infirm." Additionally, Plaintiffs contend that that area had already been conveyed to Wildwood Association, the subdivision.

4

Due to a consented-to motion for stay of discovery pending resolution of this motion, Defendants contend that this Court may only answer the question of whether Defendants have an ownership interest. They claim that all other issues may not be resolved, as full discovery has not yet occurred. Also, they ask this Court to enter judgment for Defendants recognizing their ownership interest in the beach and ROW.

## DISCUSSION

### 1. Summary Judgment Standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 2. Is Summary Judgment Warranted on the Claim for Declaratory Judgment?

Plaintiffs seek a declaratory judgment per 14 M.R.S. § 5951 (2005). "An action for declaratory judgment is appropriate for the determination of the validity . . . of a deed." *Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996) (citations omitted). This is a long-recognized method by which a person can obtain "a binding judicial determination of [his or her] legal rights" in property. *Id.*

Plaintiffs seek partial summary judgment on Count I of their complaint, but as Defendants correctly note, some of the issues in Count I cannot be resolved at this juncture as a result of the May 2006 consented to motion to stay discovery. Due to the stay, Defendants have not yet had the opportunity to address potential disputes of fact surrounding the implications of reserved areas and other matters. Therefore, this Court will only address the issue of whether Defendants have an ownership interest in the ROW and the beach outside their summer residence.

Defendants claim an ownership interest in the beach area west of the right of way, as well as the right of way itself, by virtue of a 1985 deed. "Construction of a deed . . . is a question of law." *River Dale Assn. v. Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809, 811. To interpret a deed, this Court first studies its "plain meaning," but when the "language is ambiguous, then extrinsic evidence may be consulted to ascertain the grantor's intent." *Id.*

The Law Court addressed similar issues concerning the same subdivision in an earlier case, holding that the plaintiffs had an easement to use their neighbors' beachfront property for recreation. *Chase v. Eastman*, 563 A.2d 1099, 1104 (Me. 1989). There, the Court described the history of the subdivision and the purpose of areas designated as "reserved" or "reservation" on 1931 and 1932

6

plans, which was "to provide the purchasers of inland lots with access to and use of the waterfront." *Id.* at 1100. In *Chase*, the conveyances included language that read: "The right in common with others to use the private ways . . . and also the right to use the parcels marked 'Reservations' on said plan." *Id.*

The 1985 deed in this case provides a legal description of all three Schwartz parcels and is a warranty deed. Included in the legal description for all three parcels is the following language: "Together with a right of way in common with others" that is 20 feet wide and runs along the northern or northeastern boundary. This language gives Defendants an ownership interest in the right of way, which is also clearly subject to the use of others. As depicted on the tax map, the right of way connects the road with the lakeshore. It is the method by which inland property owners access both the road and the lake. Viewing the facts in the light most favorable to Defendants for purposes of deciding Plaintiffs' motion, the deed evidences an ownership interest of Defendants in the right of way, but the plain language of the deed makes that interest subject to others' rights of access.

Turning to the beach issue, the 1985 deed also states that the property is conveyed "[t]ogether with a right to use in common with others the section marked 'Reserved' on the above mentioned plan." Therefore, even the beach area that is technically part of Lot 70 is subject to common usage. This language is almost identical to the language in *Chase*, which concerned the same general area on Sebago Lake. Even if the language were somewhat ambiguous, the intent of the parties in all of these transactions seems to be to preserve the community's access to the waterfront, while respecting the property rights of other community members. As the Law Court stated in *Chase*, the reserved areas

7

were intended to allow people who were not situated on the waterfront to access the lake for recreational activity. This does not leave Defendants without recourse to address trespassers who are not property owners, or disputes that arise with other community residents who use the ROW and beach. The partial summary judgment motion is granted in favor of Defendants on the issue of ownership and in favor of Plaintiffs on usage rights for both the ROW and beach. This Court specifically finds that Defendants cannot exclude Plaintiffs from accessing the ROW or reserved area. Other issues in Count I will not be resolved until discovery has taken place.

4.    Adverse Possession and Prescriptive Easement.

Alternatively, Defendants argue that they own that portion of the beach and the right of way by virtue of adverse possession, and Plaintiffs argue that their usage rights stem from prescriptive easement. Both theories of property rights have some elements in common. To acquire title by adverse possession, the claimant must show "that its possession and use of the property were: (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) of a duration exceeding the twenty-year limitations period." *Striefel v. Charles-Keyt-Leaman Pshp.*, 1999 ME 111, ¶ 6, 733 A.2d 984, 989 (quotations omitted).

The key element in this case is hostility. The *Striefel* court described hostility as indicating that "the possessor does not have the true owner's permission to be on the land." 1999 ME 111, ¶ 13, 733 A.2d at 991. Here, Defendants' use was not hostile to the true owner because they themselves have an ownership interest in the land, subject, of course, to their neighbors'

8

aforementioned rights of usage. One who has a deeded ownership interest need not, and cannot, establish ownership by adverse possession.

The elements of a prescriptive easement are: "(1) continuous use (2) for at least twenty years (3) under a claim of right adverse to the owner, (4) with his knowledge and acquiescence, or (5) a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed." *Sandmaier v. Tahoe Dev. Group*, 2005 ME 126, ¶ 5, 887 A.2d 517, 518. Plaintiffs have difficulty with the "knowledge and acquiescence" element. There were some extended periods of time in which Defendants either overtly allowed or did not oppose Plaintiffs' access to the ROW and beach, but there were also times when Defendants objected to certain uses and/or access.

Additionally, although they dispute the validity of the claim, since Defendants acquired the property in 1985, they have claimed to own the entire area, including the ROW and beach. The evidence establishes their knowledge of Plaintiffs' use, but it does not reveal acquiescence to unlimited use by Plaintiffs. Indeed, the evidence establishes that Defendants at times contacted various Plaintiffs to object to their actions, including placing boats on the beach behind their house, using docks, and leaving beach chairs and other items in the reserved area. Finally, proving a prescriptive easement is unnecessary because all property owners in the development have a deeded right to use the ROW and reserved beach areas. Both the adverse possession and prescriptive easement claims must fail.

The entry is:

Plaintiffs' motion for partial summary judgment on the issue of summary judgment is GRANTED on the issue of their usage rights and DENIED on the issue of ownership interest and all other issues

9

in Count I of the complaint. This Court declares that Defendants have a deeded ownership interest in the right of way, subject to Plaintiffs' right of access.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: February 22, 2007

Roland A. Cole
Justice, Superior Court

10

COURTS
d County
x 287
> 04112-0287

DAVID JOHNSON ESQ
100 MIDDLE STREET EAST TOWER
PORTLAND ME 04101

/ P|

F COURTS
and County
3ox 287
ne 04112-0287

GLENN ISRAEL ESQ
PO BOX 9729
PORTLAND ME 04104

/ D|