Agnes ANDERSON

v.

COMMISSIONER OF the DEPARTMENT OF HUMAN SERVICES.[1]

Supreme Judicial Court of Maine.

Argued Jan. 16, 1985.

Decided March 28, 1985.

---

1. In all prior stages the caption of this proceeding was *Anderson v. State of Maine and Michael Petit.* Under the doctrine of sovereign immunity, the State is not a proper party to the proceeding. *See Thiboutot v. State,* 405 A.2d 230, 232–33 (Me.1979). For that reason and because Michael Petit is named in his official capacity, we substitute Commissioner of the Department of Human Services as the party defendant.

Lynn Dondis (orally), Pine Tree Legal Assistance, Inc., Portland, for plaintiff.

Katherine Greason (orally), Asst. Atty. Gen., Dept. of Human Services, Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

■ Agnes Anderson, the plaintiff, appeals from a judgment of the Superior Court, Kennebec County, affirming a fair hearing decision of the Department of Human Services (Department) upholding the agency's recoupment of an overpayment of benefits. We affirm.

When she and her former husband separated in 1979, the plaintiff began receiving Aid to Families with Dependent Children (AFDC).[2] According to the plaintiff, an agency case worker informed her at the initial interview that her husband could pay some bills for her as long as he did not actually give her the money; Mr. Anderson thereafter paid certain bills by making deposits into checking accounts on which she drew; and the plaintiff had reported this arrangement to a case worker for the Department. The checking account arrangement continued until August 1982, when Mr. Anderson began making payments directly to the Department.

During a review in June 1983, the plaintiff learned that since December 1982 the Department had been investigating a continuing overpayment to her.[3] In November 1983, the plaintiff received notification from the Department that owing to the commencement of recovery of the overpayment, her monthly AFDC benefits would be reduced from $518 to $466 as of December 1, 1983.[4] She requested a fair hearing, which was held on December 19, 1983. The hearing officer affirmed the agency action.

The plaintiff filed a petition for Superior Court review of the decision of the hearing officer pursuant to M.R.Civ.P. 80C and 5 M.R.S.A. § 11001 (1979 & Supp.1984). The Superior Court affirmed the Department's decision, from which the plaintiff appeals. She contends the Department's failure promptly to recover the overpayment violated provisions of federal and state law. The plaintiff also asserts the Department is estopped from recouping the overpayment.

I.

The plaintiff does not contest the fact she received an overpayment, nor does she

---

2. Maine participates in the AFDC program by virtue of 22 M.R.S.A. § 3741 (Supp.1984). *See generally Littlefield v. State of Maine, Department of Human Services,* 480 A.2d 731, 735–36 (Me.1984) (discussing Maine's participation in and administration of AFDC program).

3. The federal regulation governing state AFDC plans defines overpayment as "a financial assistance payment received by or for an assistance unit ... which exceeds the amount for which that unit was eligible." 45 C.F.R. § 233.-20(a)(13)(i) (1984).

4. Before the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981), became effective October 1, 1981, there was no federal requirement of recouping AFDC overpayments, leaving the states free to recoup, but only in limited circumstances. *See* 45 C.F.R. § 233.20(a)(12) (1980). In Maine, recoupment was not allowed when the overpayment was due to agency error. Section 2318 of the Act added subdivision 22 to 42 U.S.C. § 602(a), providing that participating state agencies must "promptly take all necessary steps to correct *any* overpayment or underpayment of aid under the State plan...." 95 Stat. 357, 856 (emphasis added).

In accordance with the regulations set forth at 45 C.F.R. § 233.20(a)(13), the Department adopted similar regulations "to attempt to recover all overpayments whether the overpayment is due to the agency or the recipient." Maine Public Assistance Payments Manual ch. 1, § E at 1–1a & 2–2a (Rev. 6/82) [hereinafter MPAPM]. Thus, although the amount of the total overpayment from 1979 to 1982 was $7,800, the amount to be recovered is $2,115, calculated on the checking account deposits Mr. Anderson made between October 1981 and August 1982.

disagree with its amount. Rather, she contends that by failing to take action to recoup the overpayment until November 1983, the Department violated substantive federal and state requirements of promptness.[5] Both federal and state regulations provide that an agency must take action to recover an overpayment "by the end of the quarter following the quarter in which the overpayment is first identified." *See* 45 C.F.R. § 233.20(a)(13)(i)(E); MPAPM, ch. 1, § E. The evidence indicates that the Income Maintenance Bureau of the Department was first aware of the overpayment as late as December 1982.

The Department asserts that the plaintiff has no right to judicial review on the issue of the promptness of recoupment. The Department maintains that the purpose of the promptness term is directory, regulating interagency relations and serving as a time standard for fiscal quality control purposes. Unlike the regulations that govern eligibility for benefits, the Department argues, the promptness provision creates no rights in recipients. *Cf. 15,844 Welfare Recipients v. King*, 610 F.2d 32, 35 (1st Cir.1979) (regulation requiring states to establish methods and criteria to identify fraud does not create rights in recipients).

■ We disagree with the argument of the Department that the plaintiff is not entitled to judicial review. The Maine Administrative Procedure Act provides in pertinent part:

> Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter.

5 M.R.S.A. § 11001 (Supp.1984). No other statute either provides for or precludes review in this instance. To have standing to obtain judicial review of administrative action as an aggrieved person, one must have suffered a resulting particularized injury.[6] *Northeast Occupational Exchange, Inc. v. Bureau of Rehabilitation*, 473 A.2d 406, 408 n. 6 (Me.1984); *In Re Lappie*, 377 A.2d 441, 442-43 (Me.1977). The injury the plaintiff claims is that her AFDC benefits are diminished as the result of the Department's action. Having standing to appeal as a person aggrieved, therefore, the plaintiff may raise any issue that affects the validity of the administrative action.

■ On the merits of the plaintiff's case, however, we agree with the Department that the promptness provision in 42 U.S.C. § 602(a)(22) and the federal and Maine regulations is merely directory. Consideration of the legislative intent in enacting a stat-

---

**5.** The promptness provision is found in 42 U.S.C. § 602(a)(22) and in both federal and state regulations related thereto. The statute provides:

> A State plan for aid and services to needy families must . . .
>
> (22) provide that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan . . . .

42 U.S.C. § 602(a)(22) (1982). The regulations provide:

> (A) The State must take all reasonable steps necessary to promptly correct any overpayment.
>
> . . . .
>
> (E) Prompt recovery of an overpayment: A State must take one of the following three actions by the end of the quarter following the quarter in which the overpayment is first

identified: (1) Recover the overpayment, (2) initiate action to locate and/or recover the overpayment from a former recipient, or (3) execute a monthly recovery agreement from a current recipient's grant or income/resources.

45 C.F.R. § 233.20(a)(13)(i)(A) & (E) (1984). The Department must promptly take all reasonable and practical steps to correct and collect any known overpayment.

MPAPM, ch. I, § E, p. 1 (Rev. 6/82). The Maine regulation requires the Department to act in the manner set out in 45 C.F.R. § 233.-20(a)(13)(i)(E).

**6.** The plaintiff was a party before the hearing officer, also a necessary element of standing. *See Harrington v. Town of Kennebunk*, 459 A.2d 557, 559-60 (Me.1983).

ute is fundamental in determining whether its provisions are mandatory or directory. 1A Sutherland, *Statutes and Statutory Construction* § 25.03 at 298–99 (4th ed. C. Sands ed. 1972); *see Ottman v. Fisher*, 319 A.2d 56, 63 (Me.1974).

> Generally those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute, are not commonly considered mandatory. Likewise, if the act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized.

1A Sutherland § 25.03 at 300.

The general purpose of the Omnibus Budget Reconciliation Act, which added the recoupment provision to the statute, was to reduce federal spending through budget reconciliation as recommended by the specialized committees of the United States Congress. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. 2–3, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 397–98 [hereinafter S.Rep.]; *cf.* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 97 Stat. 357, 357. In reference to the AFDC program, the Senate Committee on Finance stated in its reconciliation recommendation to the Committee on the Budget:

> The committee believes that a policy of insuring the correctness of payment is crucial if the AFDC program is to continue to have public support. By requiring the correction of both overpayments and underpayments, the committee believes that recipients and welfare agencies alike will be encouraged to take greater responsibility for assuring the accuracy of administration. Although States have been working to improve their administrative procedures and to reduce errors, the committee notes that in the quality control measuring period April-September 1979, 23.5 percent of AFDC cases involved error. The total number of cases involving incorrect payments was 779,100, [sic] Nationally, statistics show that 9.5 percent of funds were overpayments, and 0.9 percent were underpayments. In the 6-month period cited above, a total of $493,979,000 in Federal and State funds were paid to families that were ineligible for assistance or that received payments in excess of the amount payable to them.

S.Rep. at 519, 1981 U.S.Code Cong. & Ad. News at 786.

From the Senate Report and the language of the statute, we conclude that the essence of the thing to be done is to cut federal expenditures by improving administrative accuracy through orderly and prompt identification and recovery of undue payments to recipients of AFDC benefits.

■ The plaintiff argues that the agency's delay in acting was unreasonable, increasing the amount of her overpayment and bringing her under the more stringent requirements of the post-1981 law. It was the Department's delay in discovering the overpayment that brought the plaintiff's case under the new recoupment provisions, however, not the failure to take prompt steps to correct it once it was identified, as the statute and regulations require. There is no prompt discovery requirement, and the federal recoupment requirement was effective well before the time the error came to the Department's notice.

Furthermore, any delay in the Department's recoupment action had no effect on the amount to be recovered. The plaintiff's overpayment had ceased to accrue after August 1982, which preceded the Department's identification of the error, whether that occurred in December 1982, as the plaintiff contends, or in June 1983 as the Department claims. We agree the Department failed to act within the regulations' time frame for prompt recovery, but we discern no prejudice to the plaintiff's

substantial rights by the Department's lack of promptness.

We recently adopted the view that statutory provisions requiring an act to be done within a certain time are directory and not mandatory or jurisdictional unless the statute manifests a clear intent to the contrary. *Bradbury Memorial Nursing Home v. Tall Pines Manor Associates,* 485 A.2d 634, 640 (Me.1984) (quoting *Edwards v. Steele,* 25 Cal.3d 406, 411, 158 Cal.Rptr. 662, 665, 599 P.2d 1365, 1368 (1979); *cf. Thomas v. Barry,* 729 F.2d 1469, 1470 n. 5 (D.C.Cir.1984) (statutory time provision not mandatory unless it both expressly requires official action within set time and specifies consequence for failure to comply). We find no provision expressly manifesting a contrary intent and hold that the promptness provisions in 42 U.S.C. § 602(a)(22) and the corresponding federal and Maine regulations are merely directory. The terms do not absolutely compel an agency to take action to correct an overpayment within "the quarter following the quarter in which the overpayment is first identified" by foreclosing recovery after that time has passed.

## II.

The plaintiff contends that the Department is equitably estopped from recovering the overpayment of benefits she received.[7] Estoppel bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue. *Roberts v. Maine Bonding & Casualty Co.,* 404 A.2d 238, 241 (Me.1979). The plaintiff argues that the Department affirmatively misrepresented that her former husband could pay bills for her as long as he did not give her the money directly.

The record does not support a finding of affirmative misrepresentation on the part of the Department. Although the Department stipulated the overpayment was due to agency error, the error clearly lay in its earlier failure to recognize the Andersons' checking account arrangement. The hearing officer made a factual finding that agency error resulted from a misunderstanding between the plaintiff and the agency caseworker.

On the basis of this record, that finding is not clearly erroneous. A misunderstanding will not support application of equitable estoppel. *Cf. id.* (estoppel rests upon misleading conduct). Having found no affirmative misrepresentation on the part of the Department, we need not consider the other elements of estoppel. We agree with the opinion of the Superior Court that this case "is undoubtedly representative of the type of case for which paragraph (22) [of 42 U.S.C. § 602(a)] was specifically enacted." After examining the evidence presented before the hearing officer, we determine he in fairness and reason could reach his decision based on that evidence. *See In Re Lappie,* 377 A.2d at 444.

The entry is:

Judgment affirmed.

All concurring.

---

7. The application of the doctrine is no longer precluded solely because it is invoked against a governmental entity. *Maine School Administra-* tive District No. 15 v. Raynolds, 413 A.2d 523, 533 (Me.1980).