Virginia GILDER

v.

Edson MITCHELL, et al.

Supreme Judicial Court of Maine.

Argued Oct. 31, 1995.
Decided Dec. 19, 1995.

Michael T. Healy (orally), Verrill & Dana, Portland, Philip R. Foster, Foster Law Offices, Ellsworth, for plaintiffs.

David A. Soley (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

CLIFFORD, Justice.

Edson Mitchell and Susan Mitchell appeal from a summary judgment entered in the Superior Court (Hancock County, *Mead, J.*) declaring that a right of way located on the Mitchell's property and benefitting Virginia Gilder's property cannot be unilaterally relocated by the Mitchells. The Mitchells contend that the trial court erred in finding that the right to relocate the easement was personal to the original grantor and could not be exercised by the Mitchells without Gilder's consent. Finding no error, we affirm the judgment.

The parties own neighboring parcels of land in Brooklin. Gilder is the owner of the dominant estate and gains access to her property via a right of way over the Mitchells' property, the servient estate. In 1953, Elizabeth Balch, the predecessor in title to the Mitchells, granted an easement to Jane Guild, the predecessor in title to Gilder, and in the same deed reserved the right to relocate the right of way. There is no dispute that the right of way itself is appurtenant and thus runs with the land.[1] *See O'Neill v. Williams,* 527 A.2d 322, 323 (Me.1987). What is disputed is the nature of the right reserved by Balch to relocate the right of way. That reservation reads as follows:

> The grantor herein reserves the right to relocate said right of way provided she does not by such relocation put the grantee to any substantial expense and does provide a right of way substantially as advantageous as the strip hereinabove defined.

In the summer of 1991, the Mitchells relocated the right of way used by Gilder to a distance farther away from their house, investing approximately $7000 in constructing the new road. Gilder objected. Among other concerns, she believed that because of its slope, the new road would be overly icy in the winter. Notwithstanding Gilder's objection, the Mitchells closed off the old right of way after their agent concluded that the roads were of comparable quality for winter conditions. Gilder then brought this action seeking, *inter alia*,[2] a declaratory judgment and an injunction ordering the Mitchells to restore the former right of way.

Concluding that the language in the deed reserving to Balch the right to relocate the easement is unambiguous and personal to Balch, and does not run with the land, the trial court denied the Mitchells' motion for a summary judgment and granted a summary judgment in favor of Gilder. Subsequently,

---

1. Balch granted the easement to Guild and "her heirs and assigns forever, as appurtenant to the premises and every part thereof ... a free, open and unobstructed right of way to be used for all purposes of a way, in common with the grantor herein, her heirs and assigns ... and all others who may now have or hereafter acquire similar rights therein over a strip of land...."

2. The remaining counts in Gilder's complaint include requests for damages, trespass, negligence, nuisance, and a statutory count concerning the taking and carrying away of timber. 14 M.R.S.A. § 7552 (Supp.1994).

the court (*Marsano, J.*) heard the remaining counts in Gilder's complaint in a nonjury trial and found in favor of Gilder. The court enjoined the Mitchells from obstructing the former right of way, and awarded nominal damages to Gilder.[3] Following the denial of their M.R.Civ.P. 60(b) motion for relief from the summary judgment entered on Count I, the Mitchells appeal.[4]

■ We review the grant of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered. *Gonzales v. Commissioner, Dept. of Public Safety*, 665 A.2d 681, 682 (Me.1995). For a party to be entitled to a summary judgment, it must be determined that there are no issues of material fact and that the prevailing party is entitled to a judgment as a matter of law. *Id.*

■ Once the site of an easement has been established, its location cannot be changed thereafter unless both the owner of the servient estate and the owner of the dominant estate agree, or unless the location is changed in accordance with a grant or reservation. *Davis v. Bruk*, 411 A.2d 660, 664 (Me.1980). Because Gilder, the owner of the dominant estate, opposes any change in the easement location, the issue is whether the relocation by the Mitchells is permitted pursuant to the right to relocate reserved in the 1953 deed. We agree with the trial court's conclusion that the reservation does not allow the Mitchells to relocate the easement.

■ The Mitchells contend that the court erred in concluding that the right to relocate the easement is personal to Balch and cannot be exercised by them. An easement in gross is a nonassignable personal right that terminates on the death of the individual for whom it was created. *O'Neill*, 527 A.2d at 323 (citing *Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 551–52 (Me.1973)). An appurtenant easement is created to benefit the dominant tenement and runs with the land. *Id.* In determining whether an easement is in gross or appurtenant, a court must review the deed at issue under the law existing at the time the easement was created. *Id.* (citing *Stuart v. Fox*, 129 Me. 407, 419, 152 A. 413 (1930), *cert. denied*, 284 U.S. 572, 52 S.Ct. 15, 76 L.Ed. 498 (1931)).

■ The deed in this case was drafted in 1953 and, therefore, must be reviewed under common law principles governing the creation of easements before the 1967 adoption of the Short Form Deeds Act. The Act abolished the requirement of technical words of inheritance to create estates of perpetual duration. *Id.; see* 33 M.R.S.A. § 772 (1988). At common law, it was an "unyielding rule" that in order to create an interest of perpetual duration in land by deed, it was necessary to use the technical words "heirs." *Id.; see also Hall v. Hall*, 106 Me. 389, 391, 76 A. 705 (1910); *Brown v. Dickey*, 106 Me. 97, 103, 75 A. 382 (1909). Under common law principles, when the word "heirs" has been omitted from a deed, the grantee receives only a life interest, even though the deed expresses an intention to convey an interest of perpetual duration. *Hall*, 106 Me. at 391, 76 A. 705; *Brown*, 106 Me. at 103, 75 A. 382.

■ There is no question that the right of way itself was meant to run with the land and to burden the Mitchells' land. The necessary technical word "heirs" is used, and Gilder's dominant estate is benefitted by the easement. Thus it is appurtenant. The right to relocate is a reservation[5] in the deed

3. Following a trial on the remaining counts, the trial court made findings that were somewhat inconsistent. Some of those findings, however, which are unchallenged on appeal, state that in comparison to the original right of way, the relocated easement has more difficult turns, a greater slope that could lead to problems with ice, and a lack of an adequate view. Because we conclude that the reservation of the right to relocate the right of way was personal to Balch and cannot be exercised by the Mitchells, we need not address Gilder's contention that these

findings demonstrate that the new way does not comport with the terms of the reservation that require any new way be "substantially as advantageous" as the original way.

4. The court granted a stay of enforcement of the unchallenged judgment on the remaining counts.

5. A reservation is "[a] clause in a deed or other instrument of conveyance by which the grantor creates, and reserves to himself, some right, interest, or profit in the estate granted, which had

also requiring words of inheritance to make it something other than a life estate. *O'Neill*, 527 A.2d at 324 (citing *Bean v. French*, 140 Mass. 229, 3 N.E. 206, 206–07 (1884)) (words "Reserving, however, to myself the privilege of a bridle road in front of my house" created only a life estate in grantor because the reservation contained no words of inheritance). The language in the reservation of the right to relocate the easement in the deed in this case does not contain words of inheritance and, accordingly, the right is personal to Balch and does not survive her death. Contrary to the contention of the Mitchells, there is no plainly expressed intention to reserve an interest of perpetual duration. Nor is this case similar to *O'Neill*, where the grantor's intent that the easement should benefit his retained land was presumed. Otherwise, he would have eliminated his sole means of access to the water or have had the value of his land greatly diminished. *O'Neill*, 527 A.2d at 324.

■ The Mitchells argue that the trial court ignored a presumption in the law that easements and related rights run with the land. We disagree. The court correctly pointed out that there may be rights of varying degrees created within the same grant. As the court noted, "nothing prevents the creation of an appurtenant easement which has attached to it a personal right to move it. The fact that the right of way ran with the land does not mean that the right to move it was a right of the same quality." *See Restatement of Property* § 454 (1944).

■ In support of their unsuccessful M.R.Civ.P. 60(b) motion for relief from the summary judgment,[6] the Mitchells submitted an affidavit of attorney John Pullen. Pullen asserts in his affidavit that he drafted the language of the 1953 deed that created the easement and the reservation, and that his intent in drafting the deed was that the

no previous existence as such, but is first called into being by the instrument reserving it; such as ... an easement. Reservation occurs where [the] granting clause of the deed operates to exclude a portion of that which would otherwise pass to the grantee by the description in the deed and 'reserves' that portion unto the grantor." BLACK'S LAW DICTIONARY 1307 (6th ed. 1990) (citations omitted).

reservation to relocate the right of way be appurtenant. Pullen drafted the deed for another potential grantee and had no conversation with either Balch or Guild. The Pullen evidence does not mandate that the court relieve the Mitchells from the judgment. The language of the reservation is unambiguous. It creates a right personal to the grantor, Balch, that does not survive her death. Because there is no right in the Mitchells to relocate the easement, the court appropriately granted a summary judgment to Gilder, and denied the Rule 60(b) motion.

The entry is:

Judgment affirmed.

All concurring.

6. During the pendency of this appeal, the Mitchells sought and were granted an order from this Court suspending the provisions of M.R.Civ.P. 73(f) "to the extent necessary to permit the Superior Court to hear and determine the motion for relief from judgment."